FILED
AUG 0 2 2016
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,
Plaintiff,
v.
DANIEL SHIN,
Defendant.

Case No. '16MJ2320

C O M P L A I N T

Title 21, U.S.C., Secs. 841(a)(1) and 846 - Conspiracy to Distribute a Controlled Substance

The undersigned complainant, being duly sworn, states:

Beginning on a date unknown, continuing up to and including, August 14, 2014, within the Southern District of California, and elsewhere, defendant DANIEL SHIN did knowingly and intentionally conspire with other persons known and unknown, to distribute controlled substances, to wit:

/ / /

/ / /

/ / /

/ / /

/ / /

OBG:obg:San Diego
8/1/16

oxycodone a Schedule II controlled substance in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

And the complainant states this complaint is based on the attached Affidavit in Support of Criminal Complaint which is incorporated herein by reference.

DATED:

ROCKWELL HERRON, Special Agent
Drug Enforcement Administration

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 2nd DAY OF August, 2016.

HON. JAN M. ADLER
UNITED STATES MAGISTRATE JUDGE

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Rockwell Herron, being duly sworn, hereby declare and say as follows:

## A. TRAINING & EXPERTISE

1. I am a Special Agent of the Drug Enforcement Administration ("DEA"), United States Department of Justice, currently assigned to the San Diego Field Division Office, San Diego, California. I have been employed continuously as a DEA Special Agent for over 26 years. During this time, I completed an intensive basic sixteen week training academy which provided me with a background and basis of knowledge relating to the investigation of narcotic related crimes, including but not limited to the distribution of controlled substances and controlled pharmaceutical drugs ("CPD") in violation of Title 21 of the United States Code. I have participated in dozens of continuing education programs covering diverse drug law enforcement themes. I have directed and participated in hundreds of drug investigations during my years as a DEA agent.

2. Moreover, I am familiar with the facts and circumstances described herein. This affidavit is based upon my personal involvement in this investigation, my training and experience, and information obtained from various law enforcement personnel and witnesses, including information that has been reported to me either directly or indirectly. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not necessarily included each and every fact known to me concerning this investigation; rather those facts which I believe are necessary to establish probable cause for a search warrant.

***Introduction of Shin***

3. On September 17, 2014, while investigating a San Diego based drug trafficking organization ("DTO") that acquired oxycodone 30 mg tablets (Schedule II) for distribution through the use of fraudulent medical prescriptions, agents met with a

confidential informant ("CS-1").[1] CS-1 admitted to agents that CS-1 acquired oxycodone through the use of fraudulent medical prescriptions. CS-1 told agents that one of the ways that CS-1 acquired fraudulent medical prescriptions for oxycodone was by purchasing forged prescriptions from Daniel Shin, MD ("**Shin**"), a medical doctor whose medical practice, Advanced Pain and Wellness ("Advanced Pain"), was based in Los Angeles, CA. CS-1 said that **Shin** sold CS-1 and co-conspirators fraudulent medical prescriptions for oxycodone in the name of prescriber Ademuniywa Akinloye ("Akinloye"). Akinloye was a physician's assistant who was previously employed by **Shin.**

4. CS-1 explained that CS-1 paid **Shin** $300.00 per fraudulent medical prescription. According to CS-1, **Shin** provided CS-1 and other co-conspirators with fraudulent medical prescriptions for large quantities of 30 mg tablets of oxycodone. CS-1 also said that **Shin** wrote these fraudulent medical prescriptions in the names and birthdates of patients provided by CS-1 and others. CS-1 explained that **Shin** wrote fraudulent medical prescriptions using Akinloye's name and DEA registration number, from Akinloye's prescription pad, and forging Akinloye's signature. CS-1 stated this was done after Akinloye no longer worked for **Shin**, and without Akinloye's knowledge or consent. CS-1 said CS-1 usually met **Shin** in a parking lot in Orange County, CA, to buy fraudulent Akinloye prescriptions for oxycodone.

5. Specifically, CS-1 said that on or about July 14, 2014 **Shin** provided CS-1 with a fraudulent medical prescription in the name of prescriber Akinloye. This prescription was written in the name of "patient" Craig Anderson (DOB 3/11/57)[a false identity], for 180 oxycodone 30 mg tablets. On July 14, 2014, before CS-1 was

---

[1] CS-1 has a criminal record. In 2010, CS-1 was convicted of Conspiracy to Commit Offense or Defraud the United States (felony), in violation of 18 U.S.C. sec. 371. In exchange for CS-1's cooperation, CS-1 is hoping to receive sentencing/charging consideration for his/her role as a co-conspirator in Daniel Shin drug acquisition/distribution activities. CS-1 has never produced information to the agents that has proven to be false. Based on the information provided during the course of the investigation, as described in greater detail below, and the fact that the information provided so far has proven to be accurate, I believe that CS-1 is reliable.

cooperating with the government, CS-1 presented the fraudulent medical prescription at a CVS pharmacy located in Del Mar, CA. On July 16, 2014, CS-1 returned to the pharmacy and obtained the oxycodone tablets.

6. Moreover, CS-1 also said that on or about August 14, 2014, **Shin** provided CS-1 with another forged prescription in the name of prescriber Akinloye. This prescription was also in the name of "patient" Craig Anderson (DOB 3/11/57)[a false identity], for 180 oxycodone 30 mg tablets. On August 14, 2014, still before CS-1 was cooperating with the government, CS-1 presented this fraudulent medical prescription at the same CVS pharmacy located in Del Mar, CA. On August 15, 2014, CS-1 returned to the pharmacy and obtained the oxycodone tablets.

***Pharmacy Records***

7. Thereafter, investigating agents obtained the two original fraudulent medical prescriptions referenced above. Both prescriptions were as described above, for "patient" Anderson (DOB 03/11/57), in the name of prescriber Akinloye. Agents also acquired pharmacy surveillance video showing CS-1obtain the oxycodone tablets on July 16, 2014, and August 15, 2014.

***Interview of Akinloye***

8. During September 2014, agents confirmed with Akinloye that he worked for **Shin** at Advanced Pain from February 24, 2014 through February 27, 2014. Akinloye said that at the time he started working for **Shin**, **Shin** provided him with several prescription pads imprinted with Akinloye's name and DEA registration number. Akinloye told agents that he left **Shin's** employment after only a few days because he was very concerned with the controlled substance prescribing practices at Advanced Pain. Akinloye said he did not write another oxycodone prescription after February 27, 2014.

***Prescription Pad Orders***

9. On December 9, 2014, agents obtained records of prescription pad orders from FileRX.com, a prescription printing company. FileRX.com records showed that

multiple orders for prescription pads using Akinloye's name were placed under the Advanced Pain business account from February 19, 2014 through September 12, 2014. Two initial orders of 1,200 prescription blanks each were placed on February 19, 2014. Additional orders for prescription pads (also for 1,200 prescription blanks per order) in Akinloye's name were placed from the Advanced Pain business account on April 26, 2014, July 2, 2014, and September 12, 2014, well after Akinloye left Advanced Pain. Shipping records verify that these orders were shipped to Advanced Pain. The July 2, 2014 and September 12, 2014 orders, moreover, were paid for with a credit card that was in **Shin's** name.

***Undercover Meetings with Shin***

10. On December 8, 2014, CS-1 met with **Shin** at Advanced Pain. During this recorded meeting, **Shin** refused to sell CS-1 additional fraudulent medical prescriptions. They discussed the San Diego arrest of a co-conspirator [John Sullivan], who was arrested by DEA during August 2014. **Shin** expressed serious concerns that Sullivan's arrest could result in a separate investigation of **Shin** by DEA.

11. On March 27, 2015, CS-1 met with **Shin** at **Shin's** residence in Seal Beach, CA. During this recorded meeting, CS-1 told **Shin** that CS-1 had reason to believe that Sullivan was cooperating with law enforcement. **Shin** responded by saying he was not worried about a potential law enforcement investigation and CS-1 should not be worried either, as **Shin** had provided even greater numbers of prescriptions to individuals other than CS-1 and Sullivan.

12. **Shin** further explained to CS-1 that law enforcement did not have enough agents assigned to build cases such as this, and moreover, law enforcement would need search warrants to advance its investigation. **Shin** further stated that he would lie if contacted by law enforcement and directed CS-1 to do the same. **Shin** said that it would take CS-1 wearing a wire to give law enforcement what it needed to build a case against them.

///

***Conclusion***

13. Based upon the foregoing facts, I believe that **Shin** was knowingly producing fraudulent medical prescriptions for oxycodone in the name of prescriber Akinloye, and selling them to CS-1 and others. Moreover, at least two of **Shin's** fraudulent medical prescriptions for oxycodone were used in the Southern District of California to obtain oxycodone for the purpose of distribution.